NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BARRY AHURUONYE,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

---

2018-2163

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-15-0295-M-1.

---

Decided: December 7, 2018

---

BARRY AHURUONYE, Hyattsville, MD, pro se.

JIMMY MCBIRNEY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ELIZABETH MARIE HOSFORD, JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST, *Chief Judge,* O'MALLEY and HUGHES, *Circuit Judges.*

PER CURIAM.

Barry Ahuruonye appeals from a final decision of the Merit Systems Protection Board ("the Board"). After remand from this court, the Board denied Ahuruonye's request for corrective action relating to a proposed five-day suspension.[1] Although Ahuruonye claims his proposed suspension constituted whistleblower retaliation, the Board concluded that the U.S. Fish and Wildlife Service in the Department of the Interior ("the Department") established that it would have proposed Ahuruonye's five-day suspension despite his whistleblowing activity. *Ahuruonye v. Dep't of Interior*, No. DC-1221-15-0295-M-1 (M.S.P.B. June 1, 2018) (Decision). Because we find that the Board did not abuse its discretion in deciding that the Department rebutted Ahuruonye's claim of whistleblower retaliation and conclude that the Board's findings are supported by substantial evidence, we *affirm*.

## BACKGROUND

As noted above, this is not the first time this particular whistleblowing charge has been before us. We considered this claim and an earlier Board order denying it in the context of Appeal No. 2017-1503. *Ahuruonye v. Dep't of the Interior*, 690 F. App'x 670 (Fed. Cir. 2017). In his earlier appeal, Ahuruonye appealed from five separate Board orders. We concluded that, as to four of the five (none of which are at issue here), the Board's orders were neither arbitrary and capricious, obtained in contravention of procedures required by law, nor unsupported by substantial evidence. We, thus, affirmed those decisions.

---

[1] Although the suspension never went into effect, Ahuruonye's government employment has since been terminated and the parties agree that both the Board and this court have jurisdiction to consider the merits of Ahuruonye's objection to the proposed suspension.

Because we found the Board's order on the present claim inadequate to allow for appropriate appellate review, however, we remanded for further findings.  *Id.* at 675–77, 680.

We incorporate by reference our earlier decision, specifically its discussion of the factual background relating to this case, the procedural history of the Board's consideration of it, and the legal standards we and the Board must apply to whistleblower retaliation claims.  As it relates to this action, our focus in our earlier decision was on the Board's conclusion that Ahuruonye's claim should be denied because the Department had shown it would have proposed the suspension regardless of any protected disclosures.  We concluded that the Board's findings were lacking.  *Id.* at 676.  In determining whether the Department satisfied its burden, we explained that the Board was required to consider all relevant factors, including: (1) the strength of the Department's evidence in support of its action; (2) the existence of any motive to retaliate on the part of the Department officials involved in the decision; and (3) any evidence regarding the Department's treatment of non-whistleblower, similarly situated employees.  *Id.*  As to the latter two factors, we found that the Board "said nothing direct, certainly nothing significant, to support the finding that the Department would have proposed the suspension regardless of the disclosures."  *Id.*  And, we specifically noted that the Board needed to give "some express attention" to whether the supervisor proposing the suspension was motivated by retaliatory animus before concluding that the suspension would have been proposed despite the disclosures.  *Id.* at 677.  As to factor one, we found the Board's analysis wanting because it simply reiterated the supervisor's statements "without actually making factual determinations as to what happened."  *Id.*  We, therefore, remanded for further proceedings.  *Id.* at 680.

On remand, the Board allowed the parties to submit additional evidence and argument on the issue of whether the Department would have proposed Ahuruonye's suspension despite his disclosures. Appendix at 6.[2] Ahuruonye contested this ruling, contending that our prior findings were now "the law of the case" and, therefore, the Board could not revisit them. Appendix at 6. On December 22, 2017, the Board denied Ahuruonye's motion, finding that additional evidence was proper on issues not settled by our court—namely, those questions as to which we found the Board's explanations inadequate. Appendix at 6. On January 10, 2018, Ahuruonye sought reconsideration of his opposition to supplemental evidence, which the Board again rejected, "find[ing] no reasons to reverse [the] previous decision." Appendix at 6.

The Board again denied Ahuruonye's request for corrective action. Because Ahuruonye already had established that he made protected disclosures under 5 U.S.C. § 2302(b)(8) and that the officials who proposed his suspension were aware of those disclosures, the Board focused on whether the agency could establish by clear and convincing evidence that it would have proposed the suspension despite those disclosures. After reviewing the evidence of record, including emails and declarations from the Department, the Board concluded that the Department satisfied this burden. Appendix at 7–15. The Board specifically addressed, at our direction, whether the proposed suspension was based on the proposing official's motivation to retaliate against Ahuruonye. Given Ahuruonye's poor work performance, disregard for instruc-

---

[2]    Ahuruonye provided an Appendix with his Informal Brief. Portions of the Informal Brief are cited as "Petitioner's Informal Brief," whereas portions of the Appendix are cited as "Appendix," utilizing the CM/ECF System assigned page numbers.

tions, and prior warnings and reprimands for similar infractions, the Board concluded that the proposed suspension was not based on any such improper motivation. Appendix at 16–18. Finally, the Board reviewed evidence of other similarly situated, non-whistleblower employees and determined that the proposed five-day suspension was consistent with the Department's actions in those instances. Appendix at 18–19.

Ahuruonye timely appealed the Board's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

On appeal, Ahuruonye argues that the Board: (1) failed to "apply the appropriate law and standard of pro[of] and disregarded the mandate that found that Bartnicki has motive to retaliate;" (2) ignored a prior decision of the Board that the emails that constituted the basis of Charge Two were protected disclosures, which he argues collaterally estopped the Board from considering those disclosures further; (3) "failed to consider evidence that the proposing supervisor, Penny Bartnicki, proceeded to approve the illegal grant action that was the basis of Charge #2;" and (4) failed to rule on his motion to strike supplemental evidence. Petitioner's Informal Brief at 1; Reply Brief at 1.

### A. Standard of Review

Our jurisdiction to review Board decisions is limited. By statute, we must affirm the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the Board's legal determinations *de novo* and its findings of fact for substantial evidence. *McCollum v. Nat'l Credit Union Admin.*, 417 F.3d 1332, 1337 (Fed. Cir. 2005). Substantial

evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Simpson v. Office of Pers. Mgmt.*, 347 F.3d 1361, 1364 (Fed. Cir. 2003).

Regarding "[p]rocedural matters relative to discovery and evidentiary issues," we defer to "the sound discretion of the board and its officials," and we "will not overturn the board on such matters unless an abuse of discretion is clear and is harmful." *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988).  That is, the appellant "must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case." *Id.* at 1379.  The Board's credibility determinations, moreover, "are 'virtually unreviewable on appeal.'" *Briley v. Nat'l Archives & Records Admin.*, 236 F.3d 1373, 1377 (Fed. Cir. 2001) (quoting *Rogers v. Dep't of Defense Dependents Sch.*, 814 F.2d 1549, 1554 (Fed. Cir. 1987)).

## B.  The Board Applied the Proper Law

As explained in our earlier decision, a whistleblower claimant, like Ahuruonye, must establish by a preponderance of the evidence that a given disclosure is a protected disclosure within 5 U.S.C. § 2302(b) and that the protected disclosure was a contributing factor in the agency's decision to take the challenged action.  5 U.S.C. § 7701(c)(1)(B); *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012).  Once the claimant satisfies this showing, the Department may only defeat the whistleblowing charge if it "demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure."  5 U.S.C. § 1221(e)(2); *Whitmore*, 680 F.3d at 1367.  In determining whether the Department would have taken the same action without the whistleblowing disclosures, the Board must consider all of the evidence, including: "(1) the strength of the agency's reason for the personnel action excluding the whistleblowing, (2) the strength of

any motive to retaliate for the whistleblowing, and (3) any evidence of similar action against similarly situated employees for the non-whistleblowing aspect alone." *Kalil v. Dep't of Agric.*, 479 F.3d 821, 824 (Fed. Cir. 2007).

This is the law that the Board applied here. Specifically, the Board explained that "[t]he appellant established that he made a protected disclosure under 5 U.S.C. § 2302(b)(8), and that the agency officials who proposed his suspension were aware of the disclosure." Appendix at 6. Finding Ahuruonye's burden satisfied, the Board focused on the Department's burden to show that it would have suspended Ahuruonye anyway. On appeal, Ahuruonye identifies no error in the law that the Board applied, instead only citing the relevant statutes— statutes that the Board did in fact apply. *See* Petitioner's Informal Brief at 1 (stating that the proper law to be applied includes 5 U.S.C. §§ 2302(b), 1221(e)(2), 7701). Accordingly, we reject Ahuruonye's request that we reverse the Board's decision on those grounds.

## C. The Board Was Not Estopped By its Prior Decision

In Charge Two, the Department alleged that Ahuruonye deliberately made known false and unfounded statements about his supervisor and other government officials. To succeed on this ground, the Department needed to prove by a preponderance of the evidence that Ahuruonye made statements that, at the time they were made, were unsupportable or Ahuruonye knew to be incorrect or inaccurate. *See Zayer v. Dep't of Veterans Affairs*, 90 M.S.P.R. 51 (2001).

The allegedly false statement Ahuruonye was charged with making in Charge Two is from an email discussing a grant approval in which he stated that, "this project is ineligible for funding if Penny [Bartnicki] wants to fund it that's on her as far as I know funding this project is unlawful and illegal." According to Bartnicki, this state-

ment deliberately (and falsely) implied that she would approve an illegal action.

On appeal, Ahuruonye contends that the Board ignored a prior ruling in its jurisdictional decision from a separate, but related, action where it found that the emails that are the subject of Charge Two were protected disclosures. Petitioner's Informal Brief at 1; Reply Brief at 1–8. Specifically, Ahuruonye explains that the Board previously determined that he "produced sufficient evidence to show that he reasonably believed that Ms. Bartnicki and other agency officials violated the agency's laws and regulations during the grant Approval process." Reply Brief at 8 (citing *Ahuruonye v. Dep't of Interior*, No. DC-1221-15-1112-W-1 (M.S.P.B. Sep. 3, 2015) (Decision)). Because he says the Board already concluded that Ahuruonye believed his statements where true, Ahuruonye argues that the Board erred in failing to apply that finding in its decision on remand.

Ahuruonye mischaracterizes the impact of the Board's prior findings, however. Those findings occurred in the context of a jurisdictional ruling, where the question presented was simply whether Ahuruonye had made a *non-frivolous allegation* that he had made a protected disclosure—i.e., one reflecting a reasonable belief that Bartnicki and other officials were taking illegal action. In its merits decision, the Board was charged with determining whether, and which of, Ahuruonye's disclosures were actually protected, i.e., as to which disclosures reasonably believed were true and reflected illegality.

In evaluating the evidence on remand, the Board concluded that the Department established through clear and convincing evidence that it would have charged Ahuruonye with making certain deliberately false statements which differed from his admitted protected disclosures. Specifically, the Board reviewed emails, declarations, and "other evidence in the record" and found that Bartnicki

and Smith's contentions that certain of Ahuruonye's statements were false were credible. The Board found that those separate falsehoods provided a reasonable basis for his proposed suspension. Appendix at 15. Specifically, in addressing the first specification of Charge One,[3] the Board found that the Department had "demonstrated by clear and convincing evidence that the appellant's allegations regarding the [grant at issue] were unfounded" and that Ahuruonye's contention to the contrary was not convincing. Appendix at 10. The Board made this finding after considering the Office of Inspector General audit report and sworn declarations from Bartnicki and Thomas Busiahn, the former Chief of the Division of Policy and Programs, Wildlife and Sport Fish Restoration Program. Appendix at 10.

The Board's credibility findings are "virtually unreviewable on appeal." *Rogers*, 814 F.2d at 1554. The Board weighed the evidence of record, following our prior direction to "make findings about the knowing falsity of the allegations" and explain why Charge Two "was a basis for defeating the whistleblower claim, rather than reinforcing it." *Ahuruonye*, 690 F. App'x at 677. While we may dispute the Board's interpretation of the evidence, we cannot deem its findings, which rest on credibility determinations, arbitrary and capricious. *See Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002) ("[The appellant] basically requests us to re-weigh conflicting evidence; this is not our function.").[4]

---

[3] In the first specification of Charge One, Bartnicki alleged that Ahuruonye failed to follow her instructions to work with Smith on reviewing a grant amendment for increased funding. That specification and Charge Two are based on the same set of emails and statements.

[4] Ahuruonye also argues that the Board failed to consider evidence that Bartnicki approved the allegedly

## D.  Failure to Rule on the Motion to Strike
## Did Not Cause Substantial Harm

Ahuruonye next contends that the Board failed to address his March 2, 2018 motion to strike the Department's untimely pleadings that were submitted after the Board's February 23, 2018 deadline for supplemental evidence. Reply Brief at 14.  According to Ahuruonye, both parties were required to comply with the Board's deadline, and the Department's failure to timely submit its additional pleadings—submitted one day later—"foreclosed and fatally prejudiced" Ahuruonye's ability to respond to the Department's evidence.  Reply Brief at 14.

Based on the record, both parties were required to submit their additional evidence and argument following remand on or before February 23, 2018, with rebuttal arguments due one week later, on March 2, 2018.  Appendix at 27.  Accepting as true Ahuruonye's allegations, the Department failed to timely submit its evidence and filed its pleadings one day late, on February 24.  While the Board does not seem to address Ahuruonye's motion to strike the Department's untimely evidence in its decision below,[5] we find that any failure by the Board in this

---

illegal grant.  Petitioner's Informal Brief at 1.  Whether Bartnicki ultimately approved the grant, however, does not prove that the grant was illegal or that Bartnicki would approve illegal action.  As the Department explains, "there is no reason why one would expect Ms. Bartnicki *not* to move forward with a grant action that she had repeatedly advised Mr. Ahuruonye was both proper and entirely legal."  Respondent's Informal Brief at 12–13.

[5]    It is unclear why the Board did not address Ahuruonye's motion.  The motion was filed on March 2, 2018, and the Department responded on that same day.  DC-1221-15-0295-M-1, Tabs 33, 35.  Nonetheless, the Board

regard did not cause substantial harm to Ahuruonye. Ahuruonye's response to the Department's arguments was not due until March 2, six days after the Department's late submission. Ahuruonye does not provide any facts or circumstances to support his claim that he was "fatally prejudiced" by the Department's one-day late filing. As we defer to the Board's discretion on procedural matters relative to discovery and evidentiary issues, we see no reason to overturn the Board's allowance of additional evidence. *See Curtin*, 846 F.2d at 1378.

### E. The Board Properly Addressed Motive to Retaliate

Finally, Ahuruonye contends that the Board disregarded our "mandate that found that Bartnicki has motive to retaliate." Petitioner's Informal Brief at 1. In our prior decision, however, we did not find that Bartnicki had a motive to retaliate or had acted because of such a motive; we simply explained that, under the circumstances, consideration of such a motive "warranted discussion" by the Board. *Ahuruonye*, 690 F. App'x at 676–77.

On remand, the Board did exactly what we said, devoting a section of its decision to consideration of any retaliatory motives of Bartnicki and other Department officials. Appendix at 16–18. While acknowledging the potential for a retaliatory motive on the part of Bartnicki, the Board found the proposed suspension was "reasonable, and not motivated by retaliatory animus" given Ahuruonye's prior warnings and reprimands and poor work performance, as well as Bartnicki's prior attempts to help Ahuruonye complete his work. Appendix at 16–18. In other words, while the Board acknowledged that Bartnicki would have a motive to retaliate, it concluded that her recommendation was based on objective misdeeds or

---

made no additional rulings prior to its June 1, 2018 decision—the subject of this appeal.

performance failures by Ahuruonye; and not on any retaliatory motive.  While Bartnicki may naturally have had some desire to respond to personal attacks on her, the question at issue on remand was whether any such desire actually motivated the proposed suspension.  After due consideration of that question, the Board concluded it did not.  We see no reason to disturb that finding.

CONCLUSION

For the foregoing reasons, we affirm the Board's decision.

**AFFIRMED**

COSTS

No costs.